IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DANIEL J. LATHROP, | ) | 8:11CV32 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ATTORNEY GENERAL OF | ) | |
| NEBRASKA, and FRED BRITTEN, | ) | |
| | ) | |
| Respondents. | ) | |

This matter is before the court on Petitioner Daniel J. Lathrop's ("Lathrop") Petition for Writ of Habeas Corpus ("Petition"). (Filing No. 1.) Respondent filed an Answer (filing no. 7), Brief on the merits of the Petition (filing no. 8), Reply Brief (filing no. 10), and relevant State Court Records (filing no. 6). Lathrop filed a Brief in response to the Answer. (Filing No. 9.) This matter is therefore deemed fully submitted.

Liberally construing the allegations of Lathrop's Petition, he makes the following two claims:

Claim One: Lathrop was denied due process of law in violation of the Sixth and Fourteenth Amendments because the trial court (1) abused its discretion in prompting the State about discrepancies between the factual basis for the plea and the filed charges and then allowing the State to correct the discrepancies; and (2) abused its discretion by ignoring the agreed-upon sentencing range of two-four years and sentencing Petitioner to 40-50 years ("Claim One").

Claim Two: Lathrop was denied the effective assistance of counsel in

> violation of the Sixth Amendment because his trial counsel (1) induced Petitioner to enter into a plea agreement based on the guarantee that he would be sentenced to two-four years in prison but Petitioner received a sentence of 40-50 years; and (2) failed to object or otherwise ask the court to follow the agreed-upon recommended sentencing range ("Claim Two").

(Filing No. 1 (together, the "Habeas Claims").)

## BACKGROUND

### I.  *Lathrop's Conviction and Direct Appeal*

On July 27, 2009, pursuant to a plea agreement, Lathrop pled no contest to one count of sexual assault on a child. (Filing No. 6-3, Attach. 3, at CM/ECF pp. 12-29.) The Hall County, Nebraska District Court thereafter sentenced Lathrop to serve a prison term of 40-50 years on that conviction. (*Id.* at CM/ECF pp. 30-43.) Lathrop filed a timely direct appeal in which he argued only that his sentence was excessive. (Filing No. 6-1, Attach. 1, at CM/ECF pp. 25-33.) Lathrop did not raise either of his Habeas Claim on direct appeal. (*Id.*) The Nebraska Court of Appeals summarily affirmed Lathrop's conviction and sentence on December 28, 2009. (Filing No. 6-4, Attach. 4, at CM/ECF p. 2.) Lathrop filed a petition for further review with the Nebraska Supreme Court, which denied relief on January 27, 2010. (*Id.*)

### II. *Lathrop's Post Conviction Motion and Appeal*

On May 24, 2010, Lathrop filed a verified motion for postconviction relief in the Hall County District Court (the "Post Conviction Motion"). (Filing No. 6-2, Attach. 2, at CM/ECF pp. 14-20.) Liberally construed, the Post Conviction Motion

asserted both of Lathrop's Habeas Claims. (*Id.*) Without holding an evidentiary hearing, the Hall County District Court issued a detailed opinion denying relief on both of Lathrop's Habeas Claims. (*Id.* at CM/ECF pp. 22-28.) Details of the Hall County District Court's decision are set forth where necessary below. Lathrop filed a timely appeal of the denial of post conviction relief. On appeal, Lathrop assigned several errors, encompassing both Habeas Claims. (*Id.* at CM/ECF pp. 33-43.) On November 1, 2010, the Nebraska Court of Appeals summarily affirmed the Hall County District Court's denial of post conviction relief. (Filing No. 6-4, Attach. 4, at CM/ECF p. 5.) Lathrop filed a petition for further review with the Nebraska Supreme Court, which also denied relief to Lathrop on December 8, 2010, without issuing an opinion. (*Id.*) On February 2, 2011, Lathrop timely filed his Petition in this court. (Filing No. 1.)

## *ANALYSIS*

### I.  *Standard of Review*

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the facts and the law. *See* 28 U.S.C. § 2254(d). With regard to the deference owed to factual findings of a state court's decision, a federal court is bound by those findings unless the state court made a "decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Further, section 2254(d)(1) states that a federal court may not grant a writ of habeas corpus unless the state court's decision "was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 399. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

As the Supreme Court recently noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* This high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460-61 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit recently clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance–combined with its express determination that the ineffective-assistance claim as a whole

lacked merit–plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (quotations and citations omitted). The court also determined that a federal district court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.* The Supreme Court agrees, recently stating:

> There is no text in the statute requiring a statement of reasons. The statute refers only to a "decision," which resulted from an "adjudication." As every Court of Appeals to consider the issue has recognized, determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.

*Harrington*, 131 S. Ct. at 784.

### II.   *The* Strickland *Standard*

The Hall County District Court adjudicated both of Lathrop's Habeas Claims on the merits. Lathrop's Claim Two asserts that he received the ineffective assistance of counsel. Such claims are reviewed under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 694 (1984). *Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687; *see also Bryson v. United States*, 268 F.3d 560 (8th Cir. 2001); *Williamson v. Jones*, 936 F.2d 1000, 1004 (8th Cir. 1991).

The first prong of the *Strickland* test requires that the petitioner demonstrate

that his attorney failed to provide reasonably effective assistance. *Strickland*, 466 U.S. at 687-88. In conducting such a review the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The second prong requires the petitioner to demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also Hubbeling v. United States*, 288 F.3d 363, 365 (8th Cir. 2002). A court need not address the reasonableness of the attorney's skills and diligence if the movant cannot prove prejudice under the second prong of this test. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (quoting *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988)). Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation are virtually unchallengeable" in a later habeas corpus action. 466 U.S. at 689.

Additionally, the Supreme Court has very recently emphasized that the deference due the state courts applies with vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-20 (2009) (reversing the Ninth Circuit Court of Appeals and holding that the decision of the California Court of Appeals, that the defendant was not deprived of effective assistance of counsel when his attorney recommended withdrawing his insanity defense during second phase of trial, was not contrary to or an unreasonable application of clearly established federal law; also concluding, among other things, that there was no reasonable probability that, but for counsel's alleged unprofessional error, the result of the proceeding would have been different).

In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

The question "is not whether a federal court believes the state court's

6

determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable-a substantially higher threshold." *Schriro*, supra, at 473, 127 S. Ct. 1933. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

*Id.* at 1420.

In another recent case, the Supreme Court further stressed the importance of deference to state court opinions in cases where the petitioner accepted a plea:

There are certain differences between inadequate assistance of counsel claims in cases where there was a full trial on the merits and those, like this one, where a plea was entered even before the prosecution decided upon all of the charges. A trial provides the full written record and factual background that serve to limit and clarify some of the choices counsel made. Still, hindsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed. . . . Hindsight and second guesses are also inappropriate, and often more so, where a plea has been entered without a full trial . . . [t]he added uncertainty that results when there is no extended, formal record and no actual history to show how the charges have played out at trial works against the party alleging inadequate assistance. Counsel, too, faced that uncertainty. There is a most substantial burden on the claimant to show ineffective assistance. The plea process brings to the criminal justice system a stability and a certainty that must not be undermined by the prospect of collateral challenges in cases not only where witnesses and evidence have disappeared, but also in cases where witnesses and evidence were not presented in the first place.

7

*Premo v. Moore*, ___ U.S. ___, 131 S. Ct. 733, 745-46 (2011) (citations omitted).

### III. Lathrop's Habeas Claims

#### A. State Court Findings

For his Claim One, Lathrop argues that he is entitled to relief because the trial judge abused his discretion in prompting, and then allowing, the prosecution to correct a typographical error and for failing to follow the prosecution's sentencing recommendation. (Filing No. 1.) The Hall County District Court rejected both parts of Claim One. As to the typographical error argument, that court determined:

> The State did not inform the Court of the age of the victim and the Court inquired as to that age and the State informed the Court that during the year 2007 the victim was under 16 years of age. Defendant's counsel informed the Court that the State's statement had an error and that the victim was not the stepdaughter but was the adopted daughter of the Defendant. The Court inquired of the State's attorney as to the age of the victim on the date of the criminal act as alleged in Count II and was informed by the State's attorney that there was a typographical error in the Information and he made Motion to Amend the Information to correct the year of the offense from 2008 to 2007. Defendant's counsel stated he didn't have any objection to the amendment and the Information was amended.
>
> After the Information was amended the Court inquired of Defendant's counsel whether the amendment from the year 2008 to 2007 changed any of the Defendant's position concerning his pleading no contest to the charge and inquired of the Defendant whether that amendment changed anything in his position concerning his wanting the Court to accept his no contest plea to the charge. Both Defendant and Defendant's counsel said the amendment did nothing to change the Defendant's position of requesting the Court to accept the no contest plea to Count II.

(Filing No. 6-2, Attach. 2, at CM/ECF p. 24.) As to part two of Claim One, that the Hall County District Court disregarded the sentencing recommendation made as part of the plea, that court found:

> Once more, the Court inquired as to what the plea agreement was and it was again stated by counsel and confirmed by the Defendant that the plea agreement between the Defendant and the State was that the Defendant would plead no contest to Count II, the Class II felony and in exchange the Defendant would receive from the State a dismissal of Count I, a Class IB felony and at the time of the Defendant's sentence on Count II the State would make a recommendation to the Court of a sentence of two to four years incarceration.
>
> The Defendant answered an inquiry from the Court that that was the only agreement or promise from the State or anyone else made to him as an inducement for him to enter his plea of no contest to Count II.
>
> The Court informed the Defendant that the Court was not a party to the plea agreement and that the Court did not have to accept the plea agreement or any of its terms at any time and the Defendant acknowledged that he understood that. The Court gave the opportunity to the Defendant to withdraw his no contest plea and the Defendant responded that he wished the Court to accept his no contest plea and the Court accepted the plea and found the Defendant guilty.

(*Id.* at CM/ECF pp. 24-25.) In short, the Hall County District Court rejected Claim One in its entirety, finding that the issue should have been litigated on direct appeal. That court further found that, even though Lathrop failed to litigate Claim One on direct appeal, it lacked merit because:

> In order to complete the plea agreement that the Defendant wanted the Defendant had to plead guilty or no contest to the Class II felony. The

> Defendant, when the scrivener's error was discovered, had the opportunity to withdraw his plea the Defendant chose not to and still wished the Court to accept the plea. Further, the Defendant's claim now that his plea was involuntary again belies the truth of the record in open court.

(*Id.* at CME/CF p. 26.)

Regarding Lathrop's Claim Two, that his counsel was ineffective, the Hall County District court determined:

> As to his claim of ineffective assistance of counsel the Motion for Postconviction Relief is phrased in the fact that Defendant's counsel told him that based on counsel's experience with the Court that the Defendant could rely on the sentencing range of two to four years which would be recommended by the State. Defendant goes on in his pleading to state that his attorney told him he "believed" the Court would follow this range and recommended that he consider pleading.
>
> The Defendant does not state that his attorney guaranteed or promised him that the Court would follow the two to four year sentence recommendation. He tries to artfully go around this face [sic] by stating "MY ATTORNEY DID NOT TELL ME THIS WAS NOT A GUARANTEE OR PROMISE . . ." The actual court record has been reviewed and prior to accepting the Defendant's plea the Court informed the Defendant that the Court was not bound to accept any terms of the plea agreement at any time and the Defendant acknowledged that he understood that.
>
> On the Defendant's own pleading he does not state that his attorney told him the Court would follow the sentencing recommendation and the Bill of Exceptions clearly states the Court informed the Defendant that it was not bound to follow any plea agreement.

(*Id.* at CM/ECF pp. 26-27.) The Hall County District Court summarized its findings on both Habeas Claims as follows:

10

> What this Motion for Postconviction Relief is about is that this Defendant struck a plea agreement with the State of Nebraska in which this Defendant received the benefit of a dismissal of a Class IB felony charge and the sentence recommendation from the State of Nebraska. This Defendant was informed, and acknowledged, that the Court was not a party to the plea agreement and did not have to accept the plea agreement or any of its terms at any time. There is nothing contained in the documents reviewed on this case alleged to have occurred which the Defendant did not bargain for. The Court did not accept the sentence recommendation which was the Court's prerogative. Excessive sentence is not a proper subject for postconviction relief.

(*Id.* at CM/ECF p. 27.) The Nebraska Court of Appeals affirmed the Hall County District Court's denial of relief on Lathrop's Habeas Claims without issuing an opinion. (Filing No. 6-4, Attach. 4, at CM/ECF p. 5.) The Nebraska Supreme Court also denied relief to Lathrop in rejecting his petition for further review. (*Id.*)

### B. Deference

Respondent argues that the foregoing findings of fact and conclusions of law regarding Lathrop's Habeas Claims are entitled to deference under the statutory standard of review that applies to factual and legal conclusions reached by the state courts. Indeed, as set forth above, the court must grant substantial deference to the Nebraska state court decisions. The Hall County District Court reviewed all of the evidence and determined, based on *Strickland* and other federal and state law, that the trial court did not abuse its discretion and that Lathrop's trial counsel's performance was not deficient. Summarized and condensed, that court determined that it warned Lathrop that it was not bound to accept the recommended sentence and that Lathrop clearly understood that fact and chose to proceed with his no contest plea, that Lathrop received everything he bargained for, and that his counsel did not guarantee that Lathrop would receive the recommended sentence. (Filing No. 6-2, Attach. 2, at CM/ECF pp. 22-28.)

The court has carefully reviewed the record in this matter and finds that the Nebraska state court decisions are not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Lathrop has not submitted any evidence, let alone clear and convincing evidence, that the Hall County District Court, or any Nebraska state court, was incorrect in any of its factual determinations. 28 U.S.C. § 2254(e)(1). The grant of a writ of habeas corpus is not warranted here because the Nebraska state courts correctly applied *Strickland* and other federal law. In light of these findings, Lathrop's Petition is dismissed.

IT IS THEREFORE ORDERED that:

1. Petitioner Daniel J. Lathrop's Petition for Writ of Habeas Corpus (filing no. 1) is dismissed with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 27th day of June, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.